UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| FERNANDO SOTO VASQUEZ, | ) | No. CV 12-02841-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge's ("ALJ") residual

>     functional capacity assessment is supported by substantial evidence;
> 2. Whether the ALJ's literacy finding is supported by substantial evidence; and
> 3. Whether the ALJ's credibility determination is supported by substantial evidence.

(JS at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY ("RFC") ASSESSMENT**

**IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

In Plaintiff's first issue, he asserts that the ALJ erred in determining his RFC.

Plaintiff's RFC is determined in the ALJ's Decision (AR 19-28) as follows: the capacity to perform medium work as defined in the regulations, including the ability to stand and walk up to six hours and sit up to six hours in an eight-hour workday with normal breaks. Plaintiff is precluded from climbing ladders, ropes or scaffolds, and can occasionally climb ramps or stairs, and frequently stoop, kneel, crouch and crawl. Plaintiff is restricted from work involving environmental irritants or poorly ventilated areas, and he is limited in his ability to communicate in English. (AR 22.)

The underlying medical evidence includes a Medical Evaluation: Respiratory Impairment three-page form dated March 3, 2010, prepared

by Dr. Foraste, a board-certified internal medicine treating physician. (AR 386-388.) In addition, the ALJ relied upon a consultative internal medicine evaluation ("CE") performed June 17, 2008 by Dr. Tamayo, a board-eligible internist, at the request of the Department of Social Services. (AR 280-284.) Also relied upon was an internal medicine CE performed April 8, 2010 at the request of the Department of Social Services by Dr. Klein. (AR 391-397.)

The ALJ devoted substantial discussion to the report of Dr. Foraste but determined to accord "little weight" to his opinion. It was noted that Dr. Foraste "set forth very extreme functional limitations that have inadequate, if any, justification." (AR at 24.) As examples, the ALJ rejected Dr. Foraste's conclusion that Plaintiff can stand continuously for only 20 minutes, sit continuously for a half-hour, lift five pounds and carry two pounds, and requires the use of supplemental oxygen 24 hours per day. (Id.) The ALJ noted that a pulmonary function test was referenced by Dr. Foraste, but it is not known when the test was administered, and no documentary report is included. Further, the ALJ reviewed Dr. Foraste's treatment notes which showed little more than "brief documentation of the [Plaintiff's] subjective allegations of continued abdominal pain from June 2007 through January 2008." (Id.) The ALJ determined that Dr. Foraste "appears to have routinely considered [Plaintiff] disabled." (Id.) Finally, the ALJ found that Dr. Foraste's opinion "is completely inconsistent with all objective evidence of record, ..." (AR 24-25.)

The Court notes that if the ALJ had rejected Dr. Foraste's opinion because of a generic comment that it was inconsistent with the remainder of the objective medical evidence, it would have found that

3

the ALJ's decision was not supported by substantial evidence. That is not the case here. In fact, the ALJ undertook a substantial review of the relevant medical evidence, and set it forth in his Decision. As an example, in evaluating Dr. Foraste's opinion that Plaintiff requires 24-hour use of supplemental oxygen, the ALJ compared this to a March 16, 2009 report (actually, a letter to Dr. Foraste) from Dr. Arroyo, which provided no objective support for the use of oxygen. (AR 24, 369-371.)

The ALJ also relied upon an October 2009 report of cardiologist Dr. Rao. Despite Plaintiff's complaints to this doctor that he experience shortness of breath and occasional palpitations, with the need to use home oxygen around the clock, an echocardiogram from November 2009 indicated normal systolic function. (AR 24, 380.)

The ALJ noted a pulmonary stress test from March 10, 2009 which, despite Plaintiff's complaints of shortness of breath during ambulation, indicated no respiratory distress. (AR 24, 368.)

With regard to the ALJ's notation that Dr. Foraste's opinion would be evaluated with lesser credibility because some of the underlying test results were either not present or could not be confirmed (AR 24), Plaintiff disagrees, noting there is a spirometry report (AR 375), and a chest x-ray (AR 366). (JS at 5.) But Plaintiff does not make any argument as to how these documents might be supportive of his position, and the Court's review indicates that they do not appear to be corroborative of Dr. Foraste's conclusions. The spirometry report (AR 375) appears to be unremarkable, and the x-ray report (AR 366) does not, similarly, appear to corroborate Dr. Foraste's rather extreme evaluation of Plaintiff's exertional limitations.

Plaintiff appears to be suggesting that there is some arbitrariness in the ALJ's determination of his RFC. The record, however, indicates that the ALJ discounted CE Dr. Klein's April 2010 exertional limitations, based on x-rays which would belie Plaintiff's ostensible inability to perform at a greater than light level of exertional capacity. (AR 25.) The ALJ gave greater weight to Dr. Tamayo's conclusion which supported no functional limitations. (AR 25.) But in the end, the ALJ took a middle position, between Dr. Tamayo's conclusion of no limitations, and Dr. Klein's view that Plaintiff was limited to light exertional work. The Court cannot conclude that this conclusion was reached in the absence of substantial evidence.

**II**

**THE ALJ'S LITERACY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

In Plaintiff's second issue, he contends that the ALJ's Finding No. 8, that Plaintiff has a "marginal education and is able to communicate in English" (AR 26) is incomplete, because he asserts that he is illiterate in English. Plaintiff contends that if he retains the RFC for light work, and is considered illiterate, a finding of disabled would be warranted. (JS at 15, citing 20 C.F.R. Part 404, subpt. P, App. 2, Rule 202.09.)

Plaintiff's second issue must be rejected because the ALJ found that Plaintiff is capable of a medium range of exertional work. As such, Plaintiff would not be found disabled under the Medical-Vocational Guidelines ("Grids"). The Court has determined in its discussion of the first issue raised by Plaintiff that the ALJ's conclusion that Plaintiff is capable of medium exertional work is

5

supported by substantial evidence. Consequently, Plaintiff's second argument must fail because it is grounded on the assumption that Plaintiff is only capable of light exertional work.

### III
### **THE ALJ PROPERLY DEPRECIATED PLAINTIFF'S CREDIBILITY**

In his Decision, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with the RFC assessment. (AR 23.) Plaintiff claims this is error. Indeed, Plaintiff's assertion is that, despite articulating six reasons which relate to lack of support for Plaintiff's credibility, five of them all pertain to lack of supportive objective findings. Plaintiff quite properly notes the legal proposition that an ALJ cannot reject a claimant's testimony based solely on alleged lack of objective evidence which corroborates it. (JS at 18-19, citing Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). The Court, however, does not agree that the reasons cited by the ALJ may fairly be characterized as a contradiction between subjective complaints and objective medical evidence.

As to the first reason, the lack of objective evidence, Plaintiff agrees, and the law supports the proposition that such a contradiction, if is exists, may be considered as part of the credibility analysis, although it may not be the sole basis. Plaintiff does not appear to dispute the factors supporting the discrepancy between subjective complaints and objective medical

6

evidence, cited by the Commissioner (see JS at 21), but rather, relies upon an argument that this factor cannot be considered in and of itself. Consequently, the Court need not again review the objective medical evidence cited by the ALJ and contained in the record.

The Commissioner also notes that the ALJ observed that after his surgery, Plaintiff had an unremarkable recovery and his sleep apnea was controlled with a CPAP machine. The effectiveness of treatment for a disabling condition may be considered by the ALJ. See 20 C.F.R. §§ 404.1529(c)(3)(iv), (v), 416.929(c)(iv), (v). The evidence in the record does indicate that Plaintiff was doing well after his surgery, as reflected in Dr. Eldrich's notes of February 2007. (AR 238.) The following month, Dr. Eldrich indicated there was no reason for Plaintiff to be off work. (AR 236.) Plaintiff admitted at the hearing before the ALJ that the CPAP machine helped his sleep apnea "a lot." (AR 42.) This was confirmed by a December 2008 sleep study. (AR 356.)

While Plaintiff argues that there is no finding of malingering, the ALJ did note Dr. Klein's conclusion that Plaintiff was a "poor historian." (AR 25, 391.) This observation is part of a credibility evaluation. As the Commissioner notes, Dr. Arroyo also reached a similar conclusion in the "physical examination" portion of his report. (AR 369.)

Plaintiff also provided poor effort during his examination with Dr. Klein, in particular with regard to the grip strength test. (AR 25, 393.) This conclusion, which the ALJ noted, was properly relied upon in the credibility evaluation.

Finally, the fact that Plaintiff had looked for work as recently as 25 days before the hearing was noted by the ALJ, and is, again, a proper credibility determinative technique. (AR 25, 39.)

7

Consequently, the Court finds that either under the "specific and legitimate reasons" test or the "clear and convincing reasons" test, the ALJ satisfied his obligation to properly determine the credibility of Plaintiff's subjective complaints, and the Court will therefore deny Plaintiff's relief as requested in his third issue.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: January 11, 2013                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE